David Karl Gross
Mara E. Michaletz
Birch Horton Bittner & Cherot
510 L Street, #700
Anchorage, AK 99501
dgross@bhb.com
mmichaletz@bhb.com
Telephone: 907.276.1550
Facsimile: 907.276.3680

Attorneys for Plaintiff

Filed in the Trial Courts
State of Alaska Third District
at Kenai, Alaska

JAN 21 2021

Clerk of the Trial Courts
By Via FedEx Deputy

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT KENAI

| | |
|---|---|
| OCEAN MARINE SERVICES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> AGCS MARINE INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, ENDURANCE AMERICAN INSURANCE COMPANY, and LLOYD'S SYNDICATE 2001 AML THROUGH LOCKTON COMPANIES, LLP, <br><br> Defendants. | Case No. 3KN-21-00039 CI |

## COMPLAINT

COMES NOW Plaintiff, Ocean Marine Services, LLC ("OMS"), by and through undersigned counsel, and for its claims for relief, states and alleges as follows:

OMS V. AGCS, ET AL.
COMPLAINT
01048402.DOCX

CASE NO. 3KN-21-00039 CI
PAGE 1 OF 13

Case 3:21-cv-00041-JMK   Document 1-1   Filed 02/23/21   Page 1 of 13

## I. PARTIES AND JURISDICTION

1. OMS is a limited liability company organized under the laws of the State of Delaware, with its primary business residency in Alaska. OMS is qualified in all respects to bring this action.

2. Defendant AGCS Marine Insurance Company (NAIC Code 22837) is domiciled in the State of Illinois; Defendant Liberty Mutual Insurance Company (NAIC Code 23043) is domiciled in the State of Massachusetts; Defendant Endurance American Insurance Company (NAIC Code 10641) is domiciled in the State of Delaware; and Defendant Lloyd's Syndicate 2001 AML through Lockton Companies, LLC (collectively "Allianz") is domiciled in a state other than Alaska.

3. Allianz was, at all material times, selling insurance in the State of Alaska and did sell a hull and machinery insurance policy to OMS, with policy No. FIS-17-042 ("Policy"). A true and correct copy of this policy is attached hereto as Exhibit A.

4. This Court has jurisdiction over the parties and the subject matter of this action. Venue is proper in Kenai, Alaska, as many of the events related to the manner in which the Policy was handled occurred in Nikiski, Alaska.

## II. THE INSURANCE POLICY

5. This lawsuit is the result of Allianz refusing to honor the promises made when it sold the Policy to OMS, which covered eight vessels, including the M/V Titan, the M/V Resolution, and the M/V Discovery; the bad faith manner in which Allianz has chosen to conduct its loss investigation and adjustment; and Allianz's wrongful denial of coverage for the loss. The denial of coverage in this matter is based on the fact that Allianz refused and is still refusing to pay any of the benefits promised under the Policy. The continual

OMS V. AGCS, ET AL.
COMPLAINT
01048402.DOCX

CASE NO. 3KN-21-00039 CI
PAGE 2 OF 13

Case 3:21-cv-00041-JMK   Document 1-1   Filed 02/23/21   Page 2 of 13

delays from Allianz and its refusal to provide the full extent of coverage for the Titan, the Resolution, and the Discovery, as promised in the Policy amounts to a denial of the claim.

6. Allianz sold OMS the Policy, which provides coverage for any and all "damage to the vessel" and "all other like perils"; any damage caused by a "latent defect" in the hull; and damage by "other causes of whatsoever nature arising either on shore or otherwise." This is extremely broad coverage, making it akin to an "all risks policy," and requires that when Allianz is put on notice of a loss it is required to pay for all such damages in a prompt manner.

7. The Policy also provides that OMS is obligated to notify Allianz before a survey of the damage is done or before repair work is undertaken, so that Allianz can appoint its own surveyor to oversee any repairs. However, this section of the Policy was intentionally deleted, which means that OMS was not required to give such notice and Allianz was not entitled to have its own surveyor oversee the repairs or assess the amount of the insured loss.

8. The Policy also includes a provision that may allow the insurer to avoid providing coverage under certain circumstances for "unrepaired damage"; however, this provision was also deleted, which means that the policy does, in fact, include unqualified coverage for "unrepaired damage." Specifically, the Policy will provide coverage for the cost to repair an insured vessel, even if not repaired, or the fair market value of the vessel just prior to the discovery of the damage, whichever is less.

9. There are no applicable exclusions that apply to the damages to the Resolution, the Titan or the Discovery. Allianz is therefore obligated to pay for all such loss and expenses to these vessels.

OMS V. AGCS, ET AL.
COMPLAINT
01048402.DOCX

CASE NO. 3KN-21-00039 CI
PAGE 3 OF 13

Case 3:21-cv-00041-JMK   Document 1-1   Filed 02/23/21   Page 3 of 13

10. The reasonable expectations of OMS were that Allianz would pay any claim within 30 days from the date of the loss, which is based on both the Alaska Claims Handling Regulations and industry standards. Therefore, the expectation was that Allianz would pay for the repairs or replacement cost of any insured vessels that were damaged within 30 days.

### III. THE M/V RESOLUTION

11. The M/V Resolution is a 175-foot vessel built in 1980 used primarily to service oil platforms in the Cook Inlet. In 2015, the Resolution underwent comprehensive regulatory inspections by both the United States Coast Guard ("USCG") and the American Bureau of Shipping ("ABS"). All necessary inspections and repairs were completed. Thereafter, the Resolution was inspected by the ABS and the USCG annually, as per the regulatory agencies' schedules. The Resolution continued to pass all inspections and was deemed to be seaworthy.

12. On March 9, 2019, a weld seam below the water line began to crack and sea water started to enter the engine room. As a result, the USCG and ABS removed the Resolution from service. After temporary repairs, the Resolution was granted permission by USCG and ABS to travel to Seattle for further inspection and repairs. In Seattle, it was determined that the amount needed to repair the vessel was cost-prohibitive, as the cost of repairs came close to the value of the vessel. Therefore, on January 27, 2020, the Resolution was decommissioned and sold for scrap.

13. While notice of the loss was provided earlier, OMS formally made a claim with Allianz on December 31, 2019. Because the damage was properly considered "damage to the vessel" caused by a "latent defect" in the hull, the Policy provided

OMS V. AGCS, ET AL.  
COMPLAINT  
01048402.DOCX  
CASE NO. 3KN-21-00039 CI  
PAGE 4 OF 13

Case 3:21-cv-00041-JMK   Document 1-1   Filed 02/23/21   Page 4 of 13

coverage, requiring that Allianz pay for the "unrepaired damage." Because Allianz had in its possession three repair estimates ranging from $1,486,410 to $1,776,400 and because it had a survey opining that the value of the vessel was "in excess of $3 million," Allianz was required to promptly pay the cost of repair, which was properly calculated by taking the average of the three repair estimates, $1,584,270.

14. Pursuant to the Alaska Claims Handling Regulations (3 AAC 26.050), Allianz was obligated to pay this claim within 30 business days, which would have been February 11, 2020. However, this date came and went, and there were no substantive communications from Allianz.

15. Finally, on March 30, 2020, Allianz reached out, but not to pay the claim. Instead, Allianz sent OMS a reservation of rights letter stating that, "[d]ue to the claim's intricacy, paper volume and current world order our review may take an inordinate amount of time." This explanation did not justify a further investigation. OMS provided Allianz with all of the materials needed to evaluate and pay the claim. Allianz, however, had no intention of doing so. After numerous attempts to request Allianz pay the claim, it has refused. This refusal amounts to a denial of the claim.

## IV. THE M/V TITAN

16. The M/V Titan is a 150-foot vessel built in 2001, used primarily to service oil platforms in the Cook Inlet. In 2015, the Titan underwent comprehensive regulatory inspections by both the USCG and ABS. All necessary inspections and repairs were completed. Thereafter, the Titan was inspected by the ABS and the USCG annually, as per the regulatory agencies' schedules. The Titan continued to pass all inspections and was deemed to be seaworthy.

OMS V. AGCS, ET AL.
COMPLAINT
01048402.DOCX

CASE NO. 3KN-21-00039 CI
PAGE 5 OF 13

Case 3:21-cv-00041-JMK   Document 1-1   Filed 02/23/21   Page 5 of 13

17. On January 21, 2019, the Titan was hauled out of the water to rebuild the main engines (top end). At that time, it was discovered that there was an apparent coating failure below the water line of the vessel resulting in significant erosion to the hull welds. Because of the extent of the damage, the USCG issued a no sail CG-835, the wasted weld layers were removed and welds were redone. The weld repairs were continually inspected by regulatory agencies and approved, then new coatings and anodes were applied, and the vessel was put back into service.

18. OMS formally made a claim with Allianz on July 29, 2019. Pursuant to the Alaska Claims Handling Regulations (3 AAC 26.050), Allianz was obligated to pay this claim within 30 business days, which would have been on September 9, 2019. However, similar to the manner in which the claim related to the Resolution was handled, Allianz did little or nothing to adjust this claim and allowed months and months to pass without any apparent action.

19. In order to assist Allianz with understanding the nature and amount of the claim, OMS hired an average adjuster, who specializes in presenting and quantifying marine claims. On March 9, 2020, this average adjuster provided Allianz with a spreadsheet showing all of the costs related to the claim and provided all of the back-up documentation showing the costs of repair. Even with this information, Allianz persisted with its refusal to pay the claim and it continued to do little or nothing to adjust the claim. This inaction amounts to a denial of the claim.

## V. THE M/V DISCOVERY

20. The M/V Discovery is a 183-foot vessel built in 1998, used primarily to service oil platforms in the Cook Inlet. In 2016, the Discovery underwent comprehensive

OMS V. AGCS, ET AL.
COMPLAINT
01048402.DOCX
CASE NO. 3KN-21-00039 CI
PAGE 6 OF 13

Case 3:21-cv-00041-JMK   Document 1-1   Filed 02/23/21   Page 6 of 13

regulatory inspections by both the USCG and ABS. All necessary inspections and repairs were completed. Thereafter, the Discovery was inspected by the ABS and the USCG annually, as per the regulatory agencies' schedules. The Discovery continued to pass all inspections and was deemed to be seaworthy.

21. On October 27, 2018, the Discovery was hauled out of the water using a marine rail system. Once the vessel was clear of the water and the hull was completely visible two deficiencies became evident. First, the port Kort nozzle was loose from its upper bolt flange. Second, when the vessel was removed from the water it was positioned such that two of the dry dock blocks interfered with the vessel causing damage to the external grid coolers. When the coolers were removed, a third deficiency was noted, which was wastage of certain hull plating beyond the allowable 25 percent, requiring that new plating be installed. The necessary repairs were made and the Discovery was put back into service.

22. OMS formally made a claim with Allianz on July 29, 2019. Pursuant to the Alaska Claims Handling Regulations (3 AAC 26.050), Allianz was obligated to pay this claim within 30 business days, which would have been on September 9, 2019. However, similar to the manner in which the claims related to the Resolution and Titan were handled, Allianz did little or nothing to adjust this claim and allowed months and months to pass without any apparent action.

23. In order to assist Allianz with quantifying the damages, all of the invoices related to the dry dock were provided. However, neither Allianz, nor the surveyor hired by Allianz, made any effort to review the records. Instead, more and more questions were asked, all of which could have been answered had Allianz taken the time to review the

OMS V. AGCS, ET AL.
COMPLAINT
01048402.DOCX

CASE NO. 3KN-21-00039 CI
PAGE 7 OF 13

Case 3:21-cv-00041-JMK   Document 1-1   Filed 02/23/21   Page 7 of 13

records in its possession. Even with all of the requisite information, Allianz persisted with its refusal to pay the claim and it continued to do little or nothing to adjust the claim. This inaction amounts to a denial of the claim.

## VI. THE CLAIMS HANDLING

24. The Policy is very clear that when handling a claim, the insured is required to present evidence demonstrating the amount to be paid. The insurer is not allowed to have its own independent surveyor oversee the repairs. The reason behind this Policy provision is to ensure that there is no delay in paying the claim by having the insurer's surveyor slow the process. Despite this, Allianz hired Dick Blomquist ("Blomquist") as a surveyor responsible for the claim. Blomquist proceeded to do everything in his power to delay the claim, including, but not limited to, asking irrelevant questions; refusing to review the records provided to him; failing to respond to inquiries for extended periods of time; involving himself in interpretation of the Policy; trying to determine the cause of the damage, when coverage is provided irrespective of the cause; and avoiding making any conclusion that would lead to the payment of the claim.

25. Allianz has acted in a manner meant solely to cause delay and minimize the insured loss for the Resolution, the Titan and the Discovery. However, when conducting a loss investigation, Allianz was required to be neutral and objective. Bad faith can occur when an insurance company engages in "tunnel vision," where insurance company representatives will jump to conclusions and direct the investigation in a way that merely serves to minimize the claim, including by causing delay, while failing to investigate or analyze evidence that demonstrates that additional amounts must be paid on the claim. Insurance company representatives are required to investigate not just those things that

OMS V. AGCS, ET AL.
COMPLAINT
01048402.DOCX

CASE NO. 3KN-21-00039 CI
PAGE 8 OF 13

Case 3:21-cv-00041-JMK   Document 1-1   Filed 02/23/21   Page 8 of 13

could minimize a loss, but also those things that could demonstrate that an insured loss will be costly. They are also required to do so promptly.

26. In investigating this matter, Allianz and Blomquist failed to conduct themselves in an objective manner. Allianz has used its tunnel vision to limit the claims investigation to items that could minimize the claim and cause delays, unnecessary burden, and frustration to the insured.

27. The Alaska Claims Handling Regulations and industry standards require that an insurer pay those portions of the claim not reasonably in dispute. This payment is to be made within 30 days after notice of the loss. Because there is no evidence justifying the denial of the claim related to the Resolution, and because Allianz issued no reservation of rights letter in relation to the Titan or the Discovery, it was required to pay the undisputed amount of the "unrepaired damages," which in this case would be at least $1 million, which is what Blomquist said was the minimum fair market value of the Resolution; it was required to pay the undisputed amount of repair costs to the Titan, which are at least $1.6 million; and it was required to pay the undisputed amount of repair costs to the Discovery, which are at least $250,000. Unfortunately, Allianz has done nothing to determine what amount would be undisputed. Instead, Allianz has spent all of its time coming up with ways to delay, minimize the claim, and reject the reasonable amounts to be paid as determined by OMS and its average adjuster.

28. Allianz is refusing to reimburse OMS for the full scope of insured damages, as required under the Policy it sold. These actions are bad faith insurance practice and claims handling. Allianz has placed OMS in a position where it is required to continue with its operations without the benefit of the insurance it purchased.

OMS V. AGCS, ET AL.
COMPLAINT
01048402.DOCX

CASE NO. 3KN-21-00039 CI
PAGE 9 OF 13

Case 3:21-cv-00041-JMK   Document 1-1   Filed 02/23/21   Page 9 of 13

## VII. FIRST CAUSE OF ACTION
### (Breach of Contract)

29. OMS restates and incorporates by reference the allegations set forth in paragraphs 1-28 above to the same extent as if fully set forth herein.

30. Allianz is contractually obligated pursuant to the terms of the Policy to insure OMS against loss related to "damage to the vessel" and "all other like perils"; any damage caused by a "latent defect" in the hull; and damage by "other causes of whatsoever nature arising either on shore or otherwise." This requires Allianz to pay for the unrepaired costs associated with the Resolution and the Discovery, as well as the actual costs incurred to repair the Titan.

31. Allianz has denied coverage for OMS's insured losses flowing from the damages to the Resolution, the Titan, and the Discovery because it has repeatedly delayed, failed to communicate, and refused to provide full coverage to OMS for the loss in a timely manner.

32. Allianz retained the services of a biased and interested surveyor, who is more concerned with causing delays and reducing any payment on the claim, as opposed to conducting a fair and impartial claims evaluation.

33. Allianz's refusal to provide OMS with all of the benefits purchased in the Policy, and Allianz's refusal to act in a fair and impartial manner, is a breach of contract.

34. Said breaches of contract by Allianz have and will continue to cause damage to OMS, the exact amount to be proven at time of trial.

## VIII. SECOND CAUSE OF ACTION
### (Bad Faith)

35. OMS restates and incorporates by reference the allegations set forth in paragraphs 1-34 above to the same extent as if fully set forth herein.

36. Because there is an implied-in-law covenant of good faith and fair dealing inherent in the Policy, Allianz must act in good faith toward OMS.

37. Allianz has violated the duty of good faith and fair dealing, and has acted in bad faith, which includes the following acts: Repeatedly causing delays in the claims handling; failing to provide the full benefits provided for in the Policy; using a biased surveyor to delay the claims; sending emails designed solely to cause delay and minimize the amount to be paid on the claim; refusing to accept the information provided by a professional average adjuster as to the value of the repairs to be paid pursuant to the Policy; failing to fully disclose the benefits and coverages provided for in the Policy; refusing to act in a transparent and open manner, but instead, concealing and manufacturing evidence; engaging in "tunnel vision," where Allianz would only investigate those items that could serve to minimize the claim; forcing OMS to have to file this lawsuit as a means to obtain the coverages and benefits provided for in the Policy; and other bad faith conduct.

38. This bad faith conduct has caused and continues to cause damages to OMS, the exact amount to be proven at time of trial.

## IX. THIRD CAUSE OF ACTION
### (Declaratory Judgment)

39. OMS restates and incorporates by reference the allegations set forth in paragraphs 1-38 above to the same extent as if fully set forth herein.

OMS V. AGCS, ET AL.
COMPLAINT
01048402.DOCX

CASE NO. 3KN-21-00039 CI
PAGE 11 OF 13

Case 3:21-cv-00041-JMK   Document 1-1   Filed 02/23/21   Page 11 of 13

40. Allianz is contractually obligated pursuant to the terms of the Policy to insure OMS against loss related to "damage to the vessel" and "all other like perils"; any damage caused by a "latent defect" in the hull; and damage by "other causes of whatsoever nature arising either on shore or otherwise." This requires Allianz to pay for the unrepaired costs associated with the Resolution and the Discovery, as well as the actual costs incurred to repair the Titan.

41. The Court should set forth the scope and the meaning of the Policy, such that Allianz is required to pay for the benefits promised in the Policy.

42. OMS requests the Court to declare that the Policy provides coverage for the losses related to the three vessels, leaving only the issue of the amounts to be paid.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ocean Marine Services, LLC, prays for the following relief:

1. Judgment against Allianz for an amount that compensates OMS for the unrepaired damage to the M/V Resolution and the cost of repairs to the M/V Titan and the M/V Discovery;

2. For all losses and damages OMS suffered as a result of the bad faith and/or negligent conduct on the part of Allianz;

3. For all losses and damages OMS suffered as a result of Allianz's breach of the terms and conditions of the Policy;

4. For a declaration of the meaning and scope of the insurance policy, such that the Court declares the existence of coverage;

5. For pre-judgment interest on the total judgment;
OMS V. AGCS, ET AL.
COMPLAINT
01048402.DOCX

CASE NO. 3KN-21-00039 CI
PAGE 12 OF 13

Case 3:21-cv-00041-JMK   Document 1-1   Filed 02/23/21   Page 12 of 13

6. For an award of costs and attorneys' fees pursuant to Alaska Rules of Civil Procedure 79 and 82;

7. For punitive damages; and

8. For such other and further relief as the Court may deem just and equitable.

DATED this  19th  day of January, 2021.

                              BIRCH HORTON BITTNER & CHEROT
                              Attorneys for Plaintiff

By:   /s/ David Karl Gross
        David Karl Gross, ABA #9611065
        Mara E. Michaletz. ABA #0803007

OMS V. AGCS, ET AL.                                CASE NO. 3KN-21-00039 CI
COMPLAINT                                        PAGE 13 OF 13
01048402.DOCX

Case 3:21-cv-00041-JMK    Document 1-1    Filed 02/23/21    Page 13 of 13